Edwards, Ch. J.
delivered the following opinion of the court: — After verdict for Baker, in an ejectment against Crockett, the parties mutually entered into, and submitted to a rule of court, appointing certain arbitrators, according to the act of assembly concerning awards; to determine the interference between Van Swearingen’s settlement and pre-emption, under which Baker claimed, and James Henderson’s settlement and pre-emption, under, and a part of which, Crockett claimed.
The arbitrators awarded, that Van Swearingen’s entries could not legally take any part of the land in controversy ; that Henderson’s claims were valid to a certain extent; directed the manner in which they ought to be surveyed ; and, that so far as an interference should then exist, Baker’s elder grant should yield to Crockett’s superior equity. But, supposing, as they state, that the claims had been surveyed conformably to their direction, the interference was taken to be eighty-five acres, three roods; it was therefore ordered, that die surveyor should go on the land, to mark out the metes and bounds ; that a conveyance, with especial warranty, &c. should be executed therefor, by Baker to Crocket, on a day to be assigned by the court. This award was returned, and made the interlocutory decree of the court, and an order of survey made ; upon executing which, it was discovered that the interference *395 would only be 77 acres, one rood, and some poles, when a surplus in Henderson’s surveys, unknown to the referees, should be thrown out of the estimate. After the interlocutory decree, Baker died, the heirs became parties, and the court, reciting these circumstances, made a final decree against them, for the 77 acres, one rood, and some poles, to be performed by the heirs under age, within six months after they should respectively arrive at full age ; from which decree, the heirs appealed to this court.
Several errors assigned, need not be particularly no, ticed, since the opinion delivered at this term, in the case of Gallorway's heirs vs. Webb (a). The objections principally urged against the award and decree, are, that the arbitrators proceeded, 1st, “ On a plain mistake of law 2diy, “ On a plain mistake of fact; apparent in the face of the award and papers in the cause.”
The mistake of fact alluded to, respects the surplus land, and the statement in the award, that Henderson’s claims were surveyed or represented on the plat, agreeable to ¡the construction given thereby to the entries the mistake of the law, alludes to that construction itself.
Henderson’s settlement of 400 acres, was entered to lie “ on the trace from Boonsborough to the lower salt spring on Licking, called the Sycamore forest, and running doran the creek for quantity.”
The entry of the pre-emption right, is, “ lying on the trace from Boonsborough to the lower salt spring on Licking; joining his settlement at the Sycamore forest, all around ; and to run down the creek for quantity.” The arbitrators rejected the expressions u runningdown the creek for quantity,” as.uncertain ; because they equally applied to Johnson’s fork and Hancock. And this is the error complained of, as a mistake of law.
Kyd on awards (p. 239) says, “ If it appear that the arbitrators went on a plain mistake, either as to law, or in a point of fact; that is an error appearing on the face of the award, and sufficient to set it aside and 2 Vernon 705, is cited. That is the case of Corneforth vs. Geer, and is the dictum of the lord chancellor, not much longer than the citation of the case by Kyd ; the chancellor uses the expression, however, “ in the body of the award.” What matter of fact, or of law, was charged tp have been mistaken, that case does not inform us ; *396 but we are told it was a bill to set aside an award; “ but the plaintiff failing to make out his case by proof, bill dismissed.” That case is either very loosely reported, or the chancellor expressed himself very loosely, or tra-velled out of the case, to give a mere dictum upon a point not before him. For it is hard to conceive, how, as to the matter appearing, or which ought to appear in the body of the award sought to be set aside, the plaintiff could fail to make out his case by proof; or how any proof could be required of that which appeared in the body of the award.
This case happened in the year 1715 : previous to' this, in the case of Brown vs. Brown (1 Vernon 157), the lord keeper dismissed a bill brought for relief against an award, where an umpire had made it out after he was forbid, and after the waste, which was the subject of dispute, had been repaired, except as to 40s. who notwithstanding awarded 380/. against the defendants. He said he saw no fraud or collusion in the matter ; the damages were not outrages ; the treble value (of the waste committed) might not have been awarded. He said, where there appears a manifest error in the body of an award, there, m some cases, there may be relief against it in chancery ; but where the error does not appear, without unravelling of it, and examining into matters of account, he thought it was not relievable here. This case was decided in 1682 : subsequent to both, in the case of Ives and Medcalf (1 Atk. 63), chancellor Hardwicke set aside an award upon a bill brought, because the articles were shewn only to one of the arbitrators, and not to both ; and he to whom they' were not shewn, swore that if he had seen them, he believed he should not have made such an award. The chancellor, therefore, held, “ That it was unfairly obtained ; but agreed to the general rules in cases of awards, that the arbitrators are judges of the parties' own choosing ; and that therefore they cannot object against the award, as an unreasonable j udgment, or as a judgment against law : but where the arbitrators are deceived, or make their award clandestinely, without hearing each party ; in such cases, a court of justice ought to interpose, and frustrate such awards.”
Kyd 123, cites 2 Ventris 243, as authority that a decision of arbitrators, awarding damages, where, in point of law, there was no cause of action, was, nevertheless, *397 supported, “because the parties have made the tors their judges." _
_ In the case of Ridout vs. Pain, in 3d Atk. 494, die doctrine is again glanced at: the cases of Corneforth vs. Geer, and Medcalf vs. Ives, before noticed, are referedto as supporting a position rather more extended than those cases would seem to warrant. In the case of Ridout vs. Pain, the chancellor (as reported) said, that if the arbitrators in their award are mistaken in a plain point of law, it is ground to set it aside ; and he refers to the cases of Corneforth and Geer, and Medcalf vs. Ives; and says, they determine the point, that where the arbitrators go upon a plain mistake, either as to lazo or fact, equity will relieve against the award. If by these expressions it were intended to assert, that the misjudgment of the arbitrators, upon points fairly before them, unmixed with fraud, collusion, concealment, or unfairness ; either of the referees, or of the parties submiting ; should alone be cause of setting aside an award : with due deference to the great chancellor, whose words they are said to be, we iAust say, the cases cited do not go to that length.
In the next sentence, he says, if it had been on a doubtful point of law, the award might have stood, “ Notwithstanding the court, upon great deliberation, should be of a different opinion. But (he says) I am delivered from this, the award does not specify any particular uses, but directs that a deed to lead to the uses, should be executed, to confirm the estates as the same were given by the will of Richard Pain : and therefore there is no occasion to enter into the debate, how far the court have power over awards." This is surely not taking it for a settled principle, that if the award had specified uses, different from those directed by the will, as construed by the court, that the award would therefore have been set aside. The chancellor expressly declares, in the same, or the next sentence, that if the deed which had been executed, differed from the will, it differed equally from the award.
In the case of Champion vs. Wenham (Ambler 245), it is said, that on a bill to set aside an award, without more, the court will not let the party go into any legal objections, but for partiality and corruption. But if the bill is for an account also, to let in such account, the plaintiff may make legal objections.
*398 jn ⅛¾ case, the arbitrators were parties, and confes-sec^tw0 mist;akes : the one in not considering some extra work, not within the contract ; the other in the computation of the total for “ rough paling.” These mistakes shifted the balance to the other side ; and yet the award was not set aside in toto.
In the case of Lingood vs. Eade, 2 Atk. 501-4, determined by lord Hardwicke, in 1742, which was a bill to set aside an award, and to have an account, generally, of partnership transactions ; the chancellor said, the prayer of the bill, to set aside the award, must be founded upon the fraud, corruption, or misbehaviour, of the arbitrators ; for it would be improper to come into chancery to set it aside, “merely for an objection in point of form” In this case, the chancellor makes a remark well worthy of notice, that courts had formerly gone so far as to make it almost impossible, for the arbitrators to do what is the main intention of the submission-- — the putting an end to the differences between the parties. In this case too, the chancellor says, that courts of law and of chancery, ought to be governed by the same rules in determining awards ; for if chancery should take the greater latitude, confusion and uncertainty would be introduced.
But, upon the whole, it appears very doubtful, what» meant by the chancellors, when they speak of setting aside awards for mistakes of law or fact appearing in the body of the award ; they say, it must be a plain mistake. If it should be on a doubtful point of law, the court will let it stand ; although not settled according to their deliberate opinion. What kind of mistakes shall be called plain mistakes, apparent in the body of the record, none of the adjudged cases explain ; for it does not appear, that any case was ever adjudged upon that principle, that is to sav, of misjudgment óf arbitrators in the very matter submitted to them ; fop all the cases in which these doctrines were advanced, were adjudged and decided upon,different grounds.
It would rather appear, from the cases before cited, that the misjudgment of the arbitrators, or determination contrary to the opinion of the court, is not alone sufficient to set aside the award ; it must be a mistake, produced by one or other of the parties, by fraud, or unfairness, imposing false premises upon the referees, or *399 by the collusion, corruption, or misbehaviour, of the ar-bitr-ators. In all cases of relief sought against awards, it seems evident, that the first inquiry must be, have the arbitrators settled the matter rightly ? For if they have, there is no cause of complaint. The court would not undo, for the pleasure of doing, the same thing. But if they have not settled the matters according to the opi> nionof the court, then the question arises, ean the court relieve against the judgment oí the arbitrators, upon the very case to them submitted ? Does an appeal lie from tile judges chosen by the parties, to those appointed by law, in all cases ? If not in all, in what cases does it lie ? If it is said, in every case where they have committed a plain mistake of law or fact, notwithstanding the parties have demeaned themselves properly, and the arbitrators also, then it would seem, that the award is but the foundation and commencement of litigation, where either party is dissatisfied ; and thus the intent of the submission defeated.
This doctrine would certainly be absurd, and therefore, a qualification is necessary ; this is contended for, by saying, the mistake must be apparent in the body of the award. Must this mistake be in the premises assumed ? Or in the conclusions drawn from those premises ? Or will either do ? What is to be understood by the body oí the award ? It has been before remarked, that the cases adjuded were all upon matters dehors the award, and requiring a bill and proof, to bring them before the court. They were not cases of erroneous conclusions from granted premises, but for omissions of a part of the subject, which'ought properly, to have been examined ; and, when combined with those upon which they did give judgment, ought to have produced a different conclusion ; or for the presence of some circumstances, which ought to have been absent, in order to leave the judgment of the arbitrators free and unbiassed ; such as the omission to take into calculation, the amount of certain work done, and a wrong addition of the amount of some articles, as in the case in Ambler — the withholding of the articles of agreement, as in the case in 1 Atk. — -¿i charge of fraud and collusion, as made by the bill (but not supported by proof), as in 1 Vern.— the charge of some matter (we know not what), which was not proved, as in the leading case of Corneforth vs. Geer, in 2 Vern.
*400 But it is not any where said, that the court can unravel the accounts, or the award, to get at a mistake of law or fact, whereby to set it aside. But the contrary is expressly said, in 1 Vernon 159, before cited ; and although the cases are numerous, in which awards have been set aside in chancery, they are cases in which fraud, partiality, or corruption, in greater or smaller portions, have infected the transaction of the party, or of the arbitrators, in procuring or making up the award ; that is £0 say, in those cases, where there were no other legal exceptions, which would be sufficient to prevent a judgment from being entered thereon, where the submission was by a rule of court; or where, upon an action on the bond for non-performance, the exceptions would not be good on the plea of “ no award made.”
It may fairly and reasonably be affirmed, then, that the award itself should furnish the matter of mistake of laxa qr fact ; and not a resort to the evidence upon which the arbitrators decided ; and from which they extracted an erroneous deduction of an existing lact, when it was not a fact ; or that the law operated so upon the facts, when it operated otherwise.
For examples, to make the distinctions more evident, suppose the arbitrators say, “The defendant’s having executed the deed on the day expressed therein, had dives-tec/himself of all interest in the land,” &c. “ Wherefore, we award,” &c. Now, suppose these were the matters submitted, the arbitrators have assumed a fact, to wit, the execution of the deed, and a point or construction of law, that something passed by the deed ; but the deed itself is not incorporated with the -award — shall one of the parties be permitted to aver the deed was not executed? And that the arbitrators made a plain mistake in supposing so, and ask the court to re-try that fact?
Again, shall he be permitted to produce a deed — aver it to be the same deed alluded to by the arbitrators, and ask the court to say whether any thing passed by the deed ; and without proving or alleging any fraud or partiality in the transaction, thus to set aside the award ? If so, the submission to arbitration, and an award in pursuance thereof, is a mere p'lay-thing, to be thrown aside, when either party is tired of it.
But let us suppose that the arbitrators had (in the last case), refered to the deed and the evidence of the *401 Éjcécution of it, as annexed to their award; and tfye ‘court should think they had mistaken one or both the points plaiuly; can the judgment of the arbitrators be con-troled.? They jyere judges also,- and of the parties’ own choosing; and they have decided nothing more than was submitted to them. If it should be made appear ti át the arbitrators, were in collusion, partial, or corrupt; then we answer, at once, on that account the decision ought not to be binding: and the cases before cited, would bear directly upon the question. If the case was Outrageous, at first blush, this might, of itself, be evidence of partiality or corruption, add supersede the necessity of producing other evidence; .
But .suppose it is one of those mistakes, from which no such suspicion can arise; and yet the mistake may be plain ; then the important question must arise, where shall the line be drawn, between those cases where the judgment of the arbitrators shall prevail, and where that of the court ?
To settle this rightly, is surely a task which requires much circumspection ; in as much as these tribunals, in-, stituted by the voluntary and express assent of the parties ; highly beneficial arid desirable for their convenience, frugality, arid dispatch ; may, in One mode óf re-mising them, be made totally dilatory and useless, if not unused ; whilst, on the other hand, they may be made the instruments to rivet fraud and injustice upon the parities, or a shield to cover collusion arid corruption.
There are many cases, where fhe law and fact are inseparably combined ; particularly, where the rules of law are used to find out the fact of intention ; as in the construction of deeds; and other writings: and the base now under consideration; ⅛ of that description, jf these cases are to be overhaled; arid the áwards set aside, because the court should, in construction, or ⅛ the result from, law and facts combined, .differ from the opinion of jfhe arbitrators ; all such cases; or a very great portion pf them, .roust only be delayed by an arbitrament; unless fhe prbitfatprs aye upcoírimoriiy caütipüs and careful to lock up. m secret the principles upon which they 4ecidé;
But there are cases of false assumption of premises, ,pfgeneral .legal frincipdes, hot applicable to this or that particular case; and of plain mistakes,,not of judgment; *402 büt ofcárrying the judgment given into the details of ^ transaction; which ought to be relieved ágainst, when apparent: as if the arbitrators should assume; as legal premises, that an act of assembly had passed after the date of the transaction, when it had passed before, and give their award evidently bottomed upon the mis-» take; npt of judgment, in drawing the conclusion; but in taking the premises ; or where, having decided the principle, they commit a mere inadvertence, in the amount or extent of benefit, or disadvantage, resulting to one of other of the parties, in a calculation under that principle; as, having mentioned several sums, they mistake the aggregate. In these, and such like, the measure of relief, can only be decided by the sound legal discretion of a court, when the case is presented; either by setting aside the award in to to, and deciding as if it never existed ; or by correcting the mistake, as in the case cited from Ambler.
By this view of the cases, as at common law, we may be greatly assisted, in respect of the proper effect and operation of the statute of this state, which declares that an award under that act, shall not be invalidated, or set aside, unless it shall appear to the court, “ That such award was obtained bv corruption, evident partiality, or other undue means” (a). Again, by the third section of sanie act of 1798, it is declared, that no award made by virtue of that act, shall be liable to be examined into, superseded, or revised, or be set aside, for want of form onl\, nor for other irregularity, if by such award it manifestly appears that the suit, matter, or controversy, is thereby finally and certainly decided provided, however, that nothing therein contained “ shall be construed to take from courts of equity, their power over awards,” &<\
This was a submission under that act; and it is true, that this court, at a former term, when the entries of Henderson’s settlement and pre-emption came in question between other parties, did give a construction of the entries different from that given by the arbitrators in this case. Many depositions appear in the record, but no bill or answer, or any order or leave to take depositions ; the parties stated their respective rights in the submission, and it is highly probable that these are th« depositions used by the arbitrators, there is nothing ⅛ *403 shew us that they were the whole, or a part; the arbitrators might have heard, oral testimony. No motion or bill has impeached the award, upon any other grounds than those arising out of the award itselfand the appeal was taken from the judgment or decree entered, after the return of the award to court.
The construction, given to these entries, after all the light which, has been thrown on the case; upon testimony before the arbitrators, or not before them ; or upon the statement by them, made, in their award ; is far from being such, a case as ought to. call forth the interposition of a court of law or equity.. The validity of the entries, and the figures they ought to give to the surveys, are the very matters submitted to arbitrament, and require the application of the rules of construction, to facts and objects, by which to ascertain intention, and whether that intention was properly signified.
We are, therefore, of opinion, that either as at common law, or in eqüity ; with or without the statute ; this award cannot, be set aside for mistake of law, apparent in the body or face of the award.
As to the fact, it is true, the arbitrators having certainly decided upon the merits of the claims, and given a certain standard to ascertain the quantity of interference, did suppose, that the claims, were already surveyed, in conformity to their opinion ; and the principles upon, which the surveys had been made, were in strict conformity with those of the award; but a surplus,.for want of accuracy in the adineasurment, existed ; this being a mistake, not in principle, but in a mere detail of a settled principle, was properly corrected, by the court; and especially, as the arbitrators had directed a survey, to ascertain the metes and bounds of the land to'be conveyed.
Some objection was made, that the quantity of estate to be conveyed by Bakt r, was not certainly ascertained. The arbitrators direct it to be done by deed, “ with especial warranty, against himself and those claiming under him and they had previously determined, that Crockett had the better equitable claim Either of these circumstances, combined with a view of the nature of the reference, must be sufficient, to a common intent, to ascertain what is to be the nature and extent of the conveyance.
*404 ^ósáy that the árbitr&rXmiist, in all cáééá, chalk out ⅜? précise method and form ⅛ WÍdcli íhéir áWárd ⅛ to ⅛ executed by the parties, is to make the riilé toó nice, and to sacrifice suhstáhcé tO foím.
As to; the objection, that Baker died before thé fíhál decree, and that his heirs were not bound by the award, thére is nb weight ih it. Thé J>árt!fés Wére bound by the award, áftér it was made the interlocutory decreé of thé court, ás nñúch as by any other interlocutory decreé ; Baker himself, as appears by the récord, was then alive ; waived cerfáih objections as to the fifteen days réqrtired by law before the return of the award, ⅛.; the Subsequent death Of Baker, did not dissolve á potVer formerly given, and actually executed in his lifetime. The death of the principal, would hot avoid a sale (or other Execution of á power) previously mádé, and reduced to Writing by an agent, barely because the principal had not made a deed according to thé covenant.
As fiákfef was boiihd by the award, it was jiropfer to, déCréé against his heirs, after his death; thé manner in which it was revived against theirt, yeas not bbjectéd to below, and té not how assighed for error.
Decréé affirmed.

(a) Ante 318.

(a) Acts of brad. 58. (a) Aits of 1 (⅛⅜ 1798, ch.